**Ex Parte Gilbert AMEZQUITA,**
**Applicant.**

No. AP–75383.

Court of Criminal Appeals of Texas.

Nov. 22, 2006.

Roland Brice Moore III, Houston, for Appellant.

Baldwin Chin, Assistant District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, HOLCOMB and COCHRAN, JJ., joined.

In deference to the trial court's findings of fact and conclusions of law, which support its recommendation to grant the relief that applicant has requested, the Court grants relief.

On February 6, 1998, the complainant in this case was brutally beaten at her place of employment, Burk's Plumbing,[1] a business co-owned by her father. Two days before this assault, she had had a heated verbal altercation with applicant, who was working there at the time of the argument. Applicant was employed by a bail-bond company,[2] but had been loaned to Burk's Plumbing, and after the argument, left the plumbing business and did not return. The complainant remained in a coma for ten days[3] and, after recovering consciousness, was unable to tell police investigators who had assaulted her.[4] On February 25, twenty days after the assault, when asked by police who had hurt her, the complainant whispered the name "Gilbert." She eventually selected applicant's photograph out of a photo spread, identified him at trial as her attacker, and testified at trial that applicant committed the instant assault on her.[5] Applicant, a military veter-

1. The business is variously called "Burk's Plumbing" (court of appeals opinion), "Burke Plumbing" (trial court's finding of fact no. 109), Burke's & Burke's and Carol Plumbing and Burke's Plumbing and Utilities (the complainant's father), and Bingham Plumbing (trial court's finding of fact no. 104). There is evidence in the habeas corpus record that a number of different names for the business were used at various times.

2. There is conflicting testimony as to applicant's status. He is described variously as an employee of the complainant's father, an employee hired and employed by Mr. Trejo, the majority stockholder in the plumbing business, and an employee of Trejo's bail-bond business who had been loaned to the father by Trejo during negotiations about the sale of the plumbing business to Trejo. There is no dispute that applicant was not working at the plumbing business on the day of the assault.

3. Hospital records included in the habeas corpus record note severe head injuries. DNA from fingernail scrapings taken during a rape exam performed at the time of her admission was not tested, and the evidence was destroyed soon after trial.

4. Police officers interviewed the complainant in the hospital on February 18 and February 25. On each occasion she told them that she did not remember what had happened, who had assaulted her, or when she had last had her cell phone or pager.

5. Eye-witness testimony is implicated in a large percentage of wrongful convictions. See, e.g., Bernal v. People, 44 P.3d 184, 190 (Colo.2002)(citing a study that concluded that "mistaken eyewitness identification is responsible for more of these wrongful convictions than all other causes combined."); State v. Cotton, 318 N.C. 663, 351 S.E.2d 277 (1987)(wrongful conviction based on victim's eye-witness testimony); State v. Youngblood, 153 Ariz. 50, 734 P.2d 592 (Ariz.Ct.App. 1986)(same). See also, Gary L. Wells, Mark Small, Steven Penrod, Roy S. Malpass, Solomon M. Fulero, and C.A.E. Brimacombe, Eyewitness Identification Procedures: Recommendations for Lineups and Photospreads, 22 LAW AND HUM. BEHAV., No. 6, at 1 (1998)(study of 40 cases of DNA exoneration; "Of these 40 cases, 36 (or 90%)) involved eyewitness identification evidence in which one or more eyewitnesses falsely identified the person. One person was identified by five separate eyewit-

an with no criminal record, vehemently denied that he was the perpetrator and, at the writ hearings, presented evidence in support of his contention that an employee of the plumbing company, Alonzo "Gilbert" Guerrero, a parolee with a criminal history that included convictions for violent offenses, had committed the assault. Testimony presented at the hearing included evidence connecting the complainant's missing cell phone to Guerrero and showed that, shortly before the assault, there had been a confrontation between the complainant's brother and · Guerrero over Guerrero's behavior toward the complainant.[6]

Applicant asserted a number of claims, including allegations of ineffective assistance of counsel. After conducting multiple evidentiary hearings, the trial court made findings of fact and conclusions of law.

The writ record includes copies of police offense reports that reflect that the complainant's cell phone was missing after the assault and that the complainant had no idea where it was and had not missed it until a police officer mentioned it. The trial court found that the complainant "did not exactly remember what happened to her cellular phone." Those offense reports also reflect that information was gathered regarding several telephone numbers that had been called from the complainant's cell phone on the same day of, and shortly after, the assault. The trial court also found that trial counsel did not make any effort to contact Christina Allen, a known user of the stolen cell phone, or any of the owners of the telephone numbers dialed from the complainant's cell phone, and that "an investigation of the cell phone records would have lead to evidence favorable to the applicant in the primary case."

The trial court also found "that trial counsel did not investigate information contained within the police offense report which would have lead to information reflecting that an Alonzo Gilbert Guerrero had some relevance to the primary case." It also specifically found that, "had trial counsel investigated the names and cell phone numbers contained within the police offense report," he "would have had reason to investigate Alonzo Gilbert Guerrero prior to or after Applicant's trial in the primary case." Based upon writ-hearing testimony from an assistant district attorney, the trial court found that, in 2002, that assistant district attorney, accompanied by

nesses. It is important to note that the 40 cases ... were not selected because they happen to have eyewitness identification as the primary evidence. Instead, these cases are simply the first 40 cases in the U.S. in which DNA was used to exonerate a previously convicted person. Hence, the kind of evidence that led to these wrongful convictions could have been anything. The fact that it happens to be eyewitness identification evidence lends support to the argument that eyewitness identification evidence is among the least reliable forms of evidence and yet persuasive to juries." Add head injuries sufficient to result in a long coma and the identification may become even more suspect.

6. The trial court found that, at the 2002 writ hearings, John Thornton, an investigator with

the Harris County District Attorney's Office, testified that, soon after the assault, "[the complainant's father] identified Guerrero, who had convictions in Harris County for assault, in one of the photospreads as the person who 'had words' with [his son] about leaving the complainant alone." The complainant's father testified similarly at the hearing; saying that, on the day of the assault, an Hispanic employee, whom he thought was named Guerrero, had had words with his son about staying away from the complainant, but he later indicated that it may not have been on the same day but was "close by to that." By the time of the writ hearing, the father had suffered a stroke and had difficulty with memory.

a district attorney's investigator, had spoken with Christina Allen, who had been linked to phone calls made from the complainant's cell phone after the assault alleged in the primary case. The trial court found that the assistant district attorney and investigator also met with a state-jail inmate, James Wilder, who told them that he had been in possession of the complainant's cell phone immediately after the assault[7] in the primary case and that he identified Alonzo Gilbert Guerrero from a photo spread as the person from whom he had obtained the cell phone, but was unable to identify anyone in a photo spread which contained applicant's photo. The trial court found that Wilder testified at the writ hearings and identified Alonzo Gilbert Guerrero as person who gave him the cell phone in exchange for drugs, that Wilder had "let Christina Allen and everybody else use the cell phone," and that he had never seen applicant before.

Based upon the writ-hearing testimony of another investigator from the district attorney's office and the complainant's father, the trial court found that the complainant's father, who co-owned the plumbing company at which this offense occurred, identified Alonzo Gilbert Guerrero as the person who, on or shortly before the day of the assault, "had words" with his son, complainant's brother, about Guerrero's harassment of the complainant.

The trial court specifically found that, based upon the assistant district attorney's writ-hearing testimony, Christina Allen was identified in the police offense report that was made available to trial counsel prior to trial. That police offense report contains the name Christina Allen and lists the telephone number of her aunt as a number where she could sometimes be reached. The trial court also specifically found that Wilder received the complainant's cell phone from Alonzo Gilbert Guerrero some time shortly after the commission of the offense[8] in the primary case, that Christina Allen obtained the complainant's cell phone from Wilder, and that Allen made calls from the complainant's cell phone.

■■■ To obtain habeas corpus relief for ineffective assistance of counsel under the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standards, applicant must show that counsel's performance "was deficient and that a probability exists, sufficient to undermine our confidence in the result, that the outcome would have been different but for counsel['s] deficient performance." *Ex parte White*, 160 S.W.3d 46, 49 (Tex.Crim. App.2004). Counsel's performance is deficient if it is shown to have fallen below an objective standard of reasonableness. *Id.* at 51, and *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. Prejudice to the applicant from counsel's deficient performance is judged by "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App.2005), quoting *Strickland, supra*, at 686, 104 S.Ct. 2052 "As the Supreme Court explained, the purpose of the constitutional requirement of effective counsel is to ensure a fair trial." *Id.*

---

**7.** Wilder testified that 713–643–6783 was the telephone number of his partner "Booby." That number appeared on the call list of the complainant's cell phone beginning at 2:14 p.m. on the day of the assault.

**8.** The police reports indicate that the assault took place sometime between 10:00 a.m. and 2:23 p.m. on February 6. Allen and Wilder testified at the habeas corpus hearing that Wilder acquired complainant's cell phone late in the day, described as "almost dark."

■ This Court has said that "[v]irtually every fact finding involves a credibility determination" and has "repeatedly recognized that the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex.Crim.App.1996). When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted by this Court. *Ex parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim.App.1998); *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex.Crim.App.1994). This Court "afford[s] almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *White*, 160 S.W.3d at 50.

The writ record clearly supports and confirms the trial court's findings of fact. Because the trial court's findings of fact are supported by the record, this Court accepts them as correct. *Ex parte Kimes*, 872 S.W.2d 700, 701 (Tex.Crim.App.1993).

One of the trial court's conclusions of law states, "Applicant has shown that trial counsel was ineffective in failing to conduct any independent investigation of the facts of this case and trial counsel's failure to investigate the cellular phone records." It further concludes that applicant "was harmed by trial counsel's failure to conduct any investigation of the facts of this case and trial counsel's failure to investigate the cellular phone records[,]" and has shown that trial counsel "acted deficiently in failing to investigate the cellular phone records and that Applicant was prejudiced from the alleged deficient conduct since there has been a showing that additional investigation into the cellular phone rec-

ords would have produced evidence favorable to applicant's defense in the primary case." It concluded that "the totality of the representation afforded Applicant was insufficient to protect his right to effective assistance of counsel[,]" that "Applicant was denied the effective assistance of counsel at trial[,]" and that "[t]rial counsel's insufficient representation denied Applicant a fair trial, due process and due course of law." The trial court ultimately concluded that applicant has demonstrated that his trial in the primary case was tainted by constitutional error, that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence, and recommended that this Court grant the relief requested.

■ There is no direct evidence that the cell phone was taken at the time of the assault. The complainant was beaten so badly that she was in a coma for ten days. At trial, the complainant testified that there were no other witnesses to the assault.[9] No one testified to having witnessed the theft of the cell phone. The trial court's findings of fact, which are based upon the appellate record and which quote testimony elicited from the complainant, state that, just before the assault at the plumbing business, the complainant went to get her cell phone. This indicates that the complainant's cell phone was at the plumbing business at the time the assault occurred. After the assault, the complainant could not remember what had happened to her cell phone, but shortly after the assault it was used by persons who are strangers to the complainant. Together, these findings lead to a strong

---

9. In contradiction to her testimony at applicant's trial, the complainant stated in an affidavit filed in the complainant's civil suit against the plumbing business and her father that during the assault there was a "gang" of other people watching, but not participating in, the assault and that she was unable to identify any of them. There were no witnesses to the assault, but there was evidence that other persons were present during the complainant's verbal confrontation with applicant.

implication that the phone was taken at or near the time of the assault.

Both the trial court's findings of fact and the writ record indicate that Alonzo Gilbert Guerrero was in possession of the complainant's cell phone shortly after the complainant was attacked. The persons who used the cell phone late on the same day as the assault testified that they had obtained it from Alonzo Gilbert Guerrero, who worked at the plumbing company and who had recently been confronted about his behavior toward the complainant. The record thus supports a finding that Guerrero was at the plumbing business that day and that he took the complainant's cell phone at or near the time of the assault.

While the writ-hearing testimony establishes that Guerrero was in possession of the phone shortly after the assault, there is no evidence that applicant was ever in possession of the complainant's cell phone. Neither is there evidence, other than the complainant's post-assault testimony, applicant was at the plumbing business on the day of the assault.

We could express confidence in the outcome of applicant's trial on a habeas record showing that there was no evidence showing that the cell phone was taken by her attacker. However, we conclude that, making reasonable deductions, the evidence *does* show that the complainant's cell phone was taken by her attacker. The record contains no evidence that applicant was ever in possession of the complainant's cell phone or that, other than the complainant's testimony, that he was at the plumbing business on the day of the assault. The record does contain evidence that a plumbing-business employee, Alonzo Gilbert Guerrero, a parolee with a history of violent crime and who had recently been confronted about his harassment of the complainant, was at the plumbing business

the day of the assault and possessed the complainant's cell phone shortly after the attack. While there is no direct evidence that Guerrero was the attacker, the circumstantial evidence supports such a conclusion. If circumstantial evidence may convict, it may, perforce, also acquit.

This Court concludes, as did the trial court, that counsel performed deficiently by failing to investigate the evidence involving the complainant's cell phone. We also conclude, as did the trial court, that trial counsel's deficient performance undermines confidence in the result of the trial and so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Accordingly, we grant relief. The judgment in this cause is hereby vacated, and applicant is remanded to the custody of the Harris County Sheriff to answer the charges set out in the indictment. A copy of this opinion shall be sent to the Texas Department of Criminal Justice, Correctional Institutions Division.

COCHRAN, J., filed a concurring opinion.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., MEYERS and KEASLER, JJ., joined.

COCHRAN, J., filed a concurring opinion.

This is an extremely close question. There is sufficient evidence in the habeas corpus record to support either an affirmative or negative finding of ineffective assistance of counsel. Reasonable people can and do differ on that question. It is precisely for that reason that we normally defer to the trial judge's assessment of the pertinent evidence because her assessment is based upon having heard all of the testimony at the original trial, having made

reasonable inferences from all of the evidence, and having made credibility and demeanor determinations that the cold written record before us cannot adequately convey.

The trial judge found that trial counsel was constitutionally ineffective and she recommends that applicant be granted a new trial. There is sufficient evidence in the record that supports her findings and recommendation. I therefore agree that we should accept her recommendation, although, based upon the conflicting (sometimes contradictory) evidence, I would also have deferred to contrary factual findings and recommendations. I join the majority opinion.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., MEYERS and KEASLER, JJ., joined.

I respectfully dissent. The Court decides that applicant is entitled to habeas corpus relief on an ineffective assistance of counsel claim because his retained trial counsel did not discover that there is a reasonable probability that another person, Alonzo Gilbert Guerrero, committed the aggravated assault for which applicant was convicted. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Evidence was presented at applicant's trial that the victim of the aggravated assault knew applicant. The victim worked at a plumbing company owned by her father. Applicant was a plumbing company employee in charge of the company's tool room. The victim and applicant had a heated argument after which applicant no longer worked at the plumbing company. Two days later, on February 6, 1998, **the victim was going to her car to get her cell phone** when she was attacked and beaten beyond recognition in the plumbing company tool room. She was in a coma for ten days. When she came out of the coma, she initially could not remember who assaulted her. About two weeks after the assault, the victim identified applicant as her attacker by whispering the name "Gilbert" when the police asked her who assaulted her. She also testified at applicant's trial that applicant was the one who assaulted her.[1] Applicant's trial counsel cross-examined her extensively on her initial inability to remember who assaulted her.[2]

Applicant's habeas corpus application raised several ineffective assistance of counsel claims. One of these claims is that applicant's trial lawyer was ineffective because he failed to investigate the victim's cell phone records which applicant alleges would have led to the discovery that another plumbing company employee (Guerrero) traded the victim's cell phone to a drug-dealer named Wilder after the assault. Applicant further claimed that Guerrero may have had a motive and an opportunity to harm the victim on the day of the assault.[3] The convicting court recom-

---

1. The victim testified at applicant's trial that she heard a noise in the tool room. When she went inside the tool room to investigate, she saw applicant and asked him what he was doing there. Applicant attacked her hitting her in the face and head at least ten times before she lost consciousness.

2. The evidence also shows that applicant was one of only a few persons who had a key to the tool room. Applicant claimed at trial that he no longer had this key when the assault

occurred. Guerrero never had a key to the tool room. The evidence also shows that, after the assault, the victim's family provided the police with the names of three possible suspects one of whom was applicant. Guerrero was not one of these named suspects.

3. It was alleged that the victim's brother had warned Guerrero shortly before the assault not to harass the victim and that, on the day of the assault, Guerrero was at the plumbing

mended granting applicant relief on this ineffective assistance of counsel claim and made findings adverse to applicant on his other ineffective assistance of counsel claims. In support of its recommendation to grant applicant relief, the convicting court found that "Wilder received the [victim's] cell phone from [Guerrero] some time after the commission of the offense in the primary case." [4]

This Court determines that Guerrero's possession of the victim's cell phone after the assault does not, standing alone, justify granting relief on applicant's ineffective assistance of counsel claim. The Court frames the dispositive issue as a very narrow one, which is whether the evidence supports a finding that the victim's cell phone was taken by her attacker. *See Ex parte Amezquita,* op. at 368 (Court "could express confidence in the outcome of applicant's trial on a habeas record showing that there was no evidence showing that the cell phone was taken by [the victim's] attacker").

Applicant arguably would be entitled to habeas corpus relief if the record supported a finding that the victim's cell phone was taken by her attacker.[5] It is

significant, however, that, despite requesting numerous findings, applicant did not request a finding that the victim's cell phone was taken by her attacker.[6] The convicting court also did not make a finding that the victim's cell phone was taken by her attacker. Rather, the convicting court found that the victim "did not exactly remember what happened to her cellular phone." This finding is apparently based on the trial prosecutor's post-conviction affidavit which states:

> Prior to trial, I was aware of the complainant's missing cellular phone based on the information in the police offense report. My review of the police offense report revealed that Sergeant Wilbur Robinson obtained the records of the complainant's cellular phone usage approximately one month after the date of the offense. I learned that his investigation included calling many of the phone numbers that were called from the cellular phone on the days following the offense. I also assisted in calling some of the phone numbers called from the cellular phone after the assault took place. I cannot recall which phone numbers I called but do recall that Sergeant Robinson provided me a copy of the

---

company and was very angry because his paycheck was not ready.

**4.** The evidence shows that Guerrero traded the victim's cell phone to Wilder for drugs "some time" after the assault. The evidence does not otherwise directly show how or when Guerrero obtained the victim's cell phone.

**5.** This is so because it could be difficult to express confidence in the outcome of applicant's trial on a habeas record showing that, "some time" after the assault, another plumbing company employee (Guerrero), with a violent past and a motive and an opportunity to harm the victim, had the victim's cell phone that the evidence shows was taken by her attacker. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

**6.** Applicant's original habeas corpus application asserted, "[a]t the time, [the victim] was attacked, she had a cell phone. It was stolen by her attacker." However, in applicant's first amended habeas corpus application, the allegation changed to "[t]he complaining witness possessed a cellular phone that was stolen during or immediately after the attack." In a supplemental habeas application, the allegation became, "Guerrero who was identified by a witness as the person who was the source of the complainant's stolen cell phone." It would, therefore, appear that applicant's latest pleading did not even allege that the victim's cell phone was "stolen by her attacker."

phone records. I specifically remember that neither Sergeant Robinson nor I ever uncovered any exculpatory or inculpatory evidence from the investigation of the cellular phone records. Regardless of the investigation conducted by Sergeant Robinson and myself, the complainant did not exactly remember what happened to her cellular phone. Furthermore, the police offense report reflects the possibility that the complainant's cellular phone was stolen. **During trial, the complainant testified that she was going to get her cell phone when she was attacked by [applicant] and that the complainant did not remember whether she actually got her cell phone or not.**

(Emphasis supplied).

This Court nevertheless decides that "reasonable deductions" from the evidence show that the victim's cell phone was taken by her attacker. *See Amezquita,* op. at 368 ("making reasonable deductions, the evidence *does* show that the complainant's cell phone was taken by her attacker") (emphasis in original). The Court apparently decides that one may reasonably deduce this from the evidence that Guerrero had the victim's cell phone "shortly after" the assault and that he had a motive and an opportunity to harm the victim on the day of the assault. *See id.*

But, the evidence from the habeas hearing shows, and the convicting court found, only that Guerrero had the victim's cell phone "some time" after the assault when he traded it to Wilder for drugs.[7] It is not reasonable to deduce from this that the victim's cell phone was taken by her attacker without some evidence showing that the victim had her cell phone at the time of the assault and that her cell phone was lost during the assault. The habeas record contains no such evidence. The evidence actually indicates that the victim did not even have her cell phone when she was attacked as indicated by the trial prosecutor's post-conviction affidavit. It is noteworthy that applicant's direct appeal brief also asserts that the victim "was on her way **to retrieve her cell phone out of her car when she stopped and looked inside the tool room, wherein she was immediately attacked."** (Emphasis supplied).

**In addition, there is no evidence to support a finding that Guerrero was even at the plumbing company at the time of the assault and, therefore, had an opportunity to assault the victim.** It is significant that the convicting court did not adopt the following finding that applicant requested.

24. On the sound track (of a crime scene police video), the [victim's] brother, Faurice Bingham, can be a[sic] heard telling the officer that a Mexican male named [Guerrero] came in that morning to get a paycheck and was told the check wasn't ready.[8] Mr. Bingham said that

---

7. Wilder testified that he could not recall the date when he received the victim's cell phone from Guerrero. Wilder did recall that it was "almost nighttime" at about 8:00 p.m. when he received the cell phone. Allen testified that she was at Wilder's apartment at about 10:00 p.m. on February 8th (two days after the assault) when Wilder received the victim's cell phone from Guerrero.

Wilder did testify that 713–643–6783 was his partner Booby's number (applicant presented no other evidence that this number actually belonged to someone Wilder knew),

and the victim's cell phone records do reflect a call made from her cell phone to this number at 2:14 p.m. on February 6th. However, none of this testimony proves that the victim's cell phone was taken by her attacker and none of this disputes the victim's identification of applicant as her attacker.

8. Applicant's writ counsel did not call the victim's brother to testify at the habeas hearing.

the other Hispanic employee departed the office angry about the same time [the victim] left the office. (Hrg.II, Vol. II, 93, ff.)

Applicant has not made the crime scene police video a part of the habeas record. Thus, there is nothing in this habeas record to support applicant's requested finding. And, in support of his requested finding (Hrg.II, Vol.II, 93, ff.), applicant actually relies on the direct examination of the victim's father by applicant's writ counsel. This portion of the habeas record reflects that applicant's writ counsel unsuccessfully tried to establish through the victim's father that Guerrero may have been at the plumbing company trying to get paid for a damaged windshield. No mention whatsoever was made that Guerrero was at the plumbing company around the time of the assault trying to collect a paycheck.

Q. [APPLICANT'S WRIT COUNSEL]: Okay. Now, do you remember an employee who was trying to get paid for a door that fell on his car and injured and broke his windshield? Do you recall that?

[THE STATE]: Objection, unless it's related to [applicant] or Guerrero.

[APPLICANT'S WRIT COUNSEL]: We believe that Guerrero was trying to get paid for car damage.

\* \* \*

[APPLICANT'S WRIT COUNSEL]: Do you recall?

A. [VICTIM'S FATHER]: Recall what?

Q. An employee trying to get paid back for damages to his car about the time that [the victim] got beat up?

A. No. I don't recall.

This record contains no evidence that the victim's cell phone was taken by her attacker or that she even had her cell phone during the attack. And, other than unsupported-by-the-record assertions of applicant's writ counsel, there is nothing in the record to show that Guerrero was even at the plumbing company at the time of the assault [9] with a not-getting-his-paycheck motive to harm the victim.[10]

**The victim knew applicant and identified him as her attacker by name and in person. She has not recanted her testimony.** I would decide that applicant has not sustained his burden of establishing his right to habeas corpus relief. I respectfully dissent.

---

**9.** It is, therefore, irrelevant that the victim's brother may have warned Guerrero shortly before the assault not to harass the victim.

**10.** The record does not support the assertion on page eight of the Court's opinion that Guerrero "was at the plumbing business the day of the assault." *See Amezquita,* op. at 368. Deductions cannot reasonably be made

from assertions that the record does not support.