Opinion of June 24, 2008, Withdrawn, Affirmed and Substitute Memorandum
Opinion filed November 6, 2008








Opinion of June 24, 2008, Withdrawn, Affirmed and
Substitute Memorandum Opinion filed November 6, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00593-CR

_______________

 

EX PARTE CHUTIMA WONGJAROEN, Appellant

 

                                                                                                                                               


On Appeal from the County Criminal
Court at Law No. 12

Harris County, Texas

Trial Court Cause No. 1458467 

                                                                                                                                               


 

S U B S T I T U T E   M E M O R A N D
U M   O P I N I O N

We
withdraw our memorandum opinion of June 24, 2008 and substitute the following
in its place.

Chutima
Wongjaroen appeals the trial court=s denial of her application for a
writ of habeas corpus on the ground that her guilty plea in a misdemeanor
prostitution case was involuntary.  We affirm.

I.  Background








On March
1, 2006, appellant was charged with the misdemeanor offense of prostitution. 
She entered a guilty plea to the offense on March 3, 2006, and was sentenced to
ten days confinement in the Harris County Jail.  Appellant did not appeal the
initial plea, but instead filed a writ of habeas corpus the following year,
well after she had completed her ten-day sentence.  

A.        The Writ Application

In her
writ, appellant argued she was unlawfully restrained by the prostitution
conviction because she could potentially face deportation.  She further claimed
that she entered the guilty plea in that case on the advice of her counsel,
Linda Norah-Davis, without understanding the potential immigration
consequences.  Because she was unaware that her conviction could result in
eventual deportation or denial of her right to remain in the United States, she
claimed that her plea was involuntary.  She further asserted that her attorney
did not conduct a sufficient investigation of the offense before advising her
to plead guilty, which amounted to ineffective assistance of counsel.

Appellant
attached numerous exhibits to her writ application, including the State=s information, her misdemeanor plea
papers, the trial court=s judgment on a plea of guilty/nolo contendere, an affidavit
by appellant, the offense report, and a letter from the U.S. Citizenship &
Immigration Services Department of Homeland Security.  The information alleged
that appellant Aagree[d] to engage in sexual conduct . . . for a fee.@  In appellant=s plea papers, appellant acknowledged
that she understood that if she was not a citizen of the United States, her
guilty plea could result in Adeportation, exclusion from admission to this country, or
denial of naturalization under federal law[.]@ The signed plea papers further
indicated that appellant was satisfied with her attorney=s representation, that the attorney
properly represented her, and that she had fully discussed her case with the
attorney.  Appellant acknowledged that she understood her rights and that she
knowingly and voluntarily waived them by signing the forms.  Additionally, the
plea papers provided that they were translated verbatim from English to Thai by
an interpreter.








The
trial court=s judgment and sentence establish that the trial court found appellant
knowingly, intelligently, and voluntarily waived her rights.  In the judgment
and sentence, the trial court further stated: 

[T]he
Defendant was admonished by the Court as required by law.  It appearing to the
court that the Defendant is mentally competent to stand trial, that the plea is
freely and voluntarily made, and that the Defendant is aware of the
consequences of [her] plea; the plea is hereby received by the Court and
entered of record. 

In her
affidavit, appellant averred that she did not speak English or understand the
legal system, and she explained that an attorney spoke with her through an
interpreter.  According to appellant, her attorney told her that if she
admitted she committed the offense, she would be released from jail.  Appellant
further stated that her attorney did not discuss the facts of her case or
potential defenses to the charge.  Finally, she attested that she was not
informed that conviction for a Asex crime@ would render her ineligible to extend her immigration status
and remain in the United States.  According to appellant, she would have
pleaded Anot guilty@ if she had been warned of this.

In
addition to her affidavit, appellant offered a copy of a letter she received
from the U.S. Citizenship & Immigration Services Department of Homeland
Security (the ADepartment@).  In this letter, the Department stated that it could not
process her I-485 application for change to her immigration status[1]
because she had not submitted a medical examination form and certified copies
of the information, judgment, and offense report relating to any conviction or
arrest in the preceding five years.  The letter concluded with the warning that
unless appellant submitted the requested documents, her application would be
denied.  In response to this letter, appellant pursued habeas corpus relief
from the trial court.








B.        The Evidentiary Hearing on
the Application   

The
trial court conducted an evidentiary hearing on appellant=s habeas application on June 5,
2007.  Appellant=s trial attorney, Linda Norah-Davis, appeared as a witness. 
Norah-Davis testified that she had practiced law for over twenty years,
focusing on criminal, family, and some personal injury cases.  She stated that
she recalled her interactions with appellant because she rarely represented
clients on an appointed basis, and even more rarely represented female clients
in that capacity.  

According
to Norah-Davis, she met with appellant and discussed the case, first in English
and then with the assistance of a Thai interpreter.  She further testified that
she had no trouble communicating with appellant in English, and although
appellant did not request an interpreter, Norah-Davis requested one for the
express purpose of addressing the immigration consequences of a guilty plea. 
She recounted that she informed appellant that three options were available: 
appellant could (1) plead not guilty to the offense and request a trial to
prove the transaction did not involve her; (2) plead not guilty and bond out of
jail; or (3) plead guilty and enter a plea agreement.  








Norah-Davis
stated she advised appellant not to plead guilty, and offered to investigate
the case and to try to contact one of appellant=s friends  who could obtain the funds
to post appellant=s bond.  Moreover, Norah-Davis testified that she repeatedly
expressed her concerns to appellant that, because appellant was not a United
States citizen, a guilty plea to the prostitution charge could compromise
appellant=s immigration status, impede her ability to remain in the country, and
prevent her from attaining permanent residence.   Because of these misgivings,
Norah-Davis stated that these concerns prompted her to request an interpreter
to Amake sure that [appellant] fully
understood all her options.           Norah-Davis stated that she believed
appellant fully understood all the possible consequences of a guilty plea:  A[Appellant] heard [the consequences]
twice; once with me and her in the holdover and then again when I had the
interpreter, and then a third time she was admonished before the Bench while
she was taking a plea.@  According to Norah-Davis,  appellant nevertheless insisted
that she wanted to plead guilty immediately so she could leave jail and return
to her home in Louisiana. 

Norah-Davis
also testified that she investigated the case by reading the offense report and
discussing the facts of the case with appellant.  Although Norah-Davis admitted
she did not listen to an audio recording of the communications between
appellant and an undercover police officer on which the charges were based, she
stated that this Awould have been the first thing that [she] would have done@ if appellant had decided to proceed
to trial.  Moreover, she stated that she explained to appellant that, because
appellant did not initiate a discussion of payment for sexual services,  a
viable defense was available.  Norah-Davis did not view videotapes associated
with the case, but explained that the tapes would not have aided in appellant=s defense because they did not depict
the interaction between appellant and the undercover officer.  In sum,
Norah-Davis testified that appellant pleaded guilty despite her warnings and
contrary to her advice.

After
hearing the testimony of Norah-Davis and the argument of counsel, the trial
court found that appellant=s plea was Aknowingly, intelligently, and voluntarily made, after having
been properly admonished of the consequences of her plea.@  Habeas relief was denied, and this
appeal timely ensued.

II.  Issues Presented

In two
issues, appellant asserts that the trial court abused its discretion in denying
her application for a writ of habeas corpus because (1) there was no
evidence to support her conviction, and (2) her plea was involuntary in that it
was the result of ineffective assistance of counsel.[2]









III.  Analysis

A.        Standard of Review








To
prevail on a writ of habeas corpus, the proponent must prove her allegations by
a preponderance of the evidence.  See Ex parte Thomas, 906 S.W.2d 22, 24
(Tex. Crim. App. 1995) (en banc).  We review a trial court=s ruling on an application for a writ
of habeas corpus under an abuse-of-discretion standard.  Kniatt v. State,
206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  In conducting our review, we must
be particularly mindful that the trial court, as fact finder at the writ
hearing, is the exclusive judge of the credibility of the witnesses.  See Ex
parte Amezquita, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). 

B.        No-Evidence Claim

Although
appellant asserts in her first issue that there is no evidence to support her
conviction, this argument has no application where, as here, the accused enters
a guilty plea to a misdemeanor.  Compare Tex. Code Crim. Proc. Ann. art. 27.14(a) (Vernon 2006) (a
plea of guilty to a misdemeanor permits the trial court to assess punishment
with or without evidence) with id. art. 1.15 (evidence of guilt required
for felony conviction).  We therefore overrule appellant=s first issue.  

C.        Involuntary Plea

Appellant
next asserts that her guilty plea was based on ineffective assistance of
counsel and was therefore involuntary.  When a defendant challenges the
voluntariness of a plea entered upon the advice of counsel, its voluntariness
depends upon whether counsel=s advice was (1) within the range of competence for criminal
defense attorneys, and (2) whether it is reasonably probable that, but for
counsel=s error, the defendant would not have
pleaded guilty and would have insisted on proceeding to trial.  See Ex parte
Moody, 991 S.W.2d 856, 857B58 (Tex. Crim. App. 1999); see also Strickland v.
Washington, 466 U.S. 668, 687 (1984).  Although an accused is guaranteed
effective assistance in criminal prosecutions, this assurance generally does
not extend to collateral aspects of the prosecution.  See Ex parte Morrow,
952 S.W.2d 530, 536B37 (Tex. Crim. App. 1997) (en banc).








Appellant
asserts that her trial counsel was ineffective for failing to investigate her
case.  But appellant=s trial counsel testified at the writ-application hearing
that she did not advise appellant to plead guilty, but instead Aadvised her that she had a viable
defense.@  Norah-Davis testified that she spoke
with appellant about the facts of her case.  She stated that she repeatedly
expressed her concern about appellant=s immigration status and the possible
impact of any plea on this status.  According to Norah-Davis, she advised
appellant of her options and the effect of a guilty plea.  Norah-Davis
testified that, notwithstanding her advice, appellant chose to plead guilty so
she could get out of jail and return to Louisiana.  The trial court, as the
judge of the credibility of the witnesses at appellant=s writ-application hearing, was
entitled to believe Norah-Davis=s testimony regarding her investigation and the advice she
provided to appellant about her plea, even though appellant claimed otherwise
in her affidavit.[3]

Moreover,
the only indication that appellant would not have pleaded guilty had her trial
counsel fully informed her of the immigration consequences of such a plea is
found in her affidavit, in which she stated, AAlthough I am not a citizen of the
United States, it was not explained that by being convicted of a >sex crime= I would in fact become ineligible to
extend my immigration status and remain in the country.@  The fact that a guilty plea may
result in deportation is considered a collateral consequence.  State v.
Jimenez, 987 S.W.2d 886, 888B89 (Tex. Crim. App. 1999) (en banc). 
Thus, her counsel=s alleged failure to advise her about such a collateral consequence
as the impact of her guilty plea on her immigration status does not rise to the
level of ineffective assistance of counsel.  See Morrow, 952 S.W.2d at
536B37. 

Based on
the record before us, appellant has not established that Norah-Davis=s representation fell outside the
range of competence demanded for criminal defense attorneys.  Accordingly, we
cannot say the trial court abused its discretion in denying appellant=s application for a writ of habeas
corpus.  We therefore overrule her second issue.








III.  Conclusion

Having
overruled appellant=s issues, we affirm the trial court=s denial of her application for a
writ of habeas corpus.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Substitute
Memorandum Opinion filed November 6, 2008.

Panel consists of Justices Yates,
Guzman, and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  This form is entitled, AApplication to Register Permanent Residence or Adjust
Status.@  See http://www.uscis.gov.





[2]  The State has responded to appellant=s arguments first by alleging that she did not invoke
the jurisdiction of the trial court because she did not establish that she was Aconfined@ or
Arestrained@ as
required by article 11.09 of the Texas Code of Criminal Procedure.  Appellant
filed her application for a writ of habeas corpus pursuant to Texas Code of
Criminal Procedure article 11.09, which provides A[i]f a person is confined on a charge of misdemeanor, he may apply to
the county judge of the county in which the misdemeanor is charged to have been
committed . . . .@  Tex. Code
Crim. Proc. Ann. art. 11.09 (Vernon 2005).  To be entitled to relief, a
habeas corpus applicant must establish that he is either Aconfined@ or
Arestrained@
unlawfully at the time the writ application was filed.  Dahesh v. State,
51 S.W.3d 300, 302 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d).  AConfinement@ or Aconfined@ includes Anot
only . . . the actual, corporeal and forcible detention of a person, but
likewise . . . any coercive measures by threats, menaces or the fear of injury,
whereby one person exercises a control over the person of another, and detains
him within certain limits.@  Tex. Code Crim. Proc. Ann. art. 11.21. 
ARestraint@ or
Arestrained,@ on
the other hand, refers to a person who is Aunder
the kind of control which one person exercises over another, not to confine him
within certain limits, but to subject him to the general authority and power of
the person claiming such right.@  Id.
art. 11.22. 

Appellant alleges she is Arestrained in that she became deportable as a result
of her plea and conviction pursuant to Section 212 of the Immigration and
Nationality Act, as amended, and 8 U.S.C. '
1182(a).@  Appellant further asserts that she Ahas been denied residency and faces removal from the
country as a result of her plea of guilty and conviction.@  But appellant has provided no evidence that she has
been denied residency or faces removal from the country.  Instead, as discussed
above, she provided a letter from the Department of Homeland Security
indicating that her I-485 application was incomplete.  This letter also states
that, if appellant fails to furnish the requested information, her application
will be denied.  But it in no way indicates that her application will be denied
due to her misdemeanor conviction.  Appellant cites Ex parte Davis in
support of her contention that she is restrained.  748 S.W.2d 555, 557 (Tex.
App.CHouston [1st Dist.] 1988, pet. ref=d).  In Davis, the First Court of Appeals
concluded that the applicant was restrained by a misdemeanor conviction because
he had been denied entry into the military based on that conviction.  Id. 


Here, appellant has provided no evidence
that her misdemeanor conviction has impacted her immigration status. 
Appellant, however, has established that she was convicted of an offense that
makes her an Ainadmissible alien.@  See
8 U.S.C.A. ' 1182(a)(2)(D).  In her affidavit, she further claims
that Ait was not explained that by being convicted of a >sex crime= I
would in fact become ineligible to extend my immigration status and remain in
the country.@  Although we are unconvinced that this implication in
her affidavit is sufficient to invoke the jurisdiction of the trial court, in
an abundance of caution, we address the merits of her claim. 





[3]  In addition, the record contains numerous
indications that appellant was fully advised that her conviction could impact
her immigration status, both in English by her lawyer and the trial court, and
in Thai by an interpreter.