

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00457-CR
## NO. 02-14-00458-CR

EX PARTE TIFFNEY LYNNE
MCADOO

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NOS. C-372-010172-1247940-AP, C-372-010188-1247941-AP

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tiffney Lynne McAdoo appeals from the trial court's denials of her applications for writs of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 8 (West Supp. 2014). We affirm the trial court's orders. *See* Tex. R. App. P. 31.3.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. GUILTY PLEAS

McAdoo was indicted with two offenses of theft from an elderly person valued at $1,500 or more but less than $20,000. *See* Tex. Penal Code Ann. § 31.03(a), (e)(4), (f)(3) (West Supp. 2014). On July 16, 2012, after the indictments had been pending for over two years and after plea negotiations failed, the trial court called the cases for trial. At that time, McAdoo informed the trial court that she had hired a new attorney—Christopher Lewis—to replace the attorney that had represented her up to that point—Jim Shaw—because McAdoo believed Shaw had been "ineffective." The trial court informed McAdoo that she could not change attorneys on the day of jury selection. The trial court then denied Lewis's request for a continuance, causing Lewis to withdraw his motion to substitute as McAdoo's counsel, and denied Shaw's motion to withdraw as McAdoo's counsel.

After a short break and before jury selection began before a magistrate, the State and McAdoo reached plea agreements under which McAdoo pleaded guilty to both offenses. McAdoo signed written plea admonishments and stated to the magistrate that she was freely and voluntarily pleading guilty and had freely and voluntarily signed the plea admonishments and written plea recommendations. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a) (West Supp. 2014). She also affirmed that she was pleading guilty because she was guilty and for no other reason. The magistrate found McAdoo guilty of the offenses,

sentenced her to five years' confinement in each case, suspended imposition of the sentences, and placed McAdoo on community supervision for five years. *See id.* art. 42.12, § 3 (West Supp. 2014). The magistrate further acknowledged that a hearing regarding appropriate restitution would be conducted later, that the "paperwork" would be forwarded to the community-supervision department, and that the conditions of community supervision would be explained to her by that department. The trial court adopted the magistrate's actions. The next day on July 17, 2012, the trial court held a hearing regarding restitution and concluded that restitution would be set at $34,400.

## B. POST-CONVICTION PROCEEDINGS

McAdoo attempted to appeal her convictions, but this Court dismissed for want of jurisdiction based on her guilty pleas. *See* Tex. R. App. P. 25.2(a)(2), (d); *McAdoo v. State*, Nos. 02-12-00434-CR, 02-12-00435-CR, 2012 WL 6196901, at *1 (Tex. App.—Fort Worth Dec. 13, 2012, no pet.) (mem. op., not designated for publication). In 2013, the State moved to revoke McAdoo's community supervision in each case. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 21(e). Before the trial court could hear the State's motions to revoke, McAdoo filed two applications for writs of habeas corpus arguing that her pleas were involuntary, rendering her convictions legally invalid, and that she could not obtain the requested relief by appeal. *See id.* art. 11.072, §§ 2(b)(1), 3(a) (West Supp. 2014). She alleged that she wrote "under duress . . . under her signature on the plea papers in this case."

3

The trial court held an evidentiary hearing on McAdoo's applications.[2] *See id.* art. 11.072, § 6(b). McAdoo testified that when she signed the plea admonishments and the judicial confessions, she wrote "under duress" beneath her signature. Indeed, the clerk's records reflect that McAdoo made such notations under her signature on (1) the judicial-confession and community-supervision-application portions of one plea-admonishment form, (2) the written-waiver portion of the other plea admonishment form,[3] (3) one of her acknowledgements that she had received the conditions and supplemental conditions of community supervision, and (4) both of the trial court's certifications of McAdoo's right of appeal. None of her other signatures in the appellate record contains the notation. The notations are small, barely legible, and appear to be part of the cursive style of her signature, but the State does not dispute that the notations were made or that they read "under duress."

McAdoo testified that she added the notations because she "was not allowed to speak with regards to the ineffectiveness of my legal counsel at that time" and that she did not intend to plead guilty and accept the terms of

---

[2]The State agreed that if McAdoo agreed to "waive" her applications, the potential punishment available to the trial court if it revoked McAdoo's community supervision would be reduced from five years' confinement to three and would take into account any time she had already been confined. McAdoo declined the offer and elected to proceed with a hearing on her applications.

[3]McAdoo did not append the notation to her signature on the judicial-confession or the community-supervision-application portion of this plea-admonishment form.

4

community supervision. McAdoo averred that she told Shaw before she pleaded guilty that she believed that she "was being forced to sign the plea deal" and that Shaw "could not adequately represent" her. She acknowledged that she did not raise her duress argument to the trial court either before or after she pleaded guilty other than her handwritten duress notations. She did allege that she told the magistrate that she "was being forced to plea" and averred that the reporter's record of the hearing before the magistrate was "incorrect." McAdoo testified, however, that she had told Lewis and Amanda Preston, a court officer with the community-supervision department, that her pleas had been involuntary. McAdoo conceded that not all of her signatures included the under-duress notation but argued that one of the signatures—the signature on one of the trial court's certifications of her right of appeal—was not hers.[4]

During McAdoo's testimony, the trial court tried to clarify the relevant timeline:

> So my point, Ms. McAdoo, is you are here - - you came from [the magistrate after pleading guilty] to [the trial court]. I gave you the rules [i.e., the terms of McAdoo's community supervision]. You went across the street [to the community-supervision department]. And my only question was between the time you left that [magistrate] courtroom, came over here, got your probation rules, scribbled "under duress" - - that nobody noticed at the time, because I sure would have dealt with it had I known. Had I seen it or had probation told me, "She wrote 'under duress'," had anyone noticed it, I would have dealt with it right then . . . . You went across the street, there

_____

[4]The disputed signature on this certification looks similar to the other signatures McAdoo admitted were hers. Further, it appears that the signature McAdoo disputes is hers includes the under-duress notation.

were some issues involved [regarding McAdoo not wanting to give the department her personal information], whatever you're telling, telling them you're under duress, whatever conversations, I wasn't across the street. And the next day when you came in for your restitution hearing, you never addressed any of those conversations with probation with me.

Preston testified that McAdoo had not told her that her pleas had been involuntary and never pointed out her handwritten notations to Preston. Because the notations were small and camouflaged by McAdoo's cursive signature, Preston did not notice the "under duress" notations. If McAdoo had told Preston that she was not guilty or that her plea had been involuntary, Preston stated that she would have been required to "immediately contact their attorney and notify the Court and stop everything and get them both back into the courtroom and fix it if it needs to be fixed." She had done just that "on numerous occasions in the past." Neither Shaw nor Lewis testified at the hearing. At the conclusion of the hearing, the trial court stated that "someone should have seen" the notations and that it was "disappointed" neither Preston nor the magistrate saw them.

The trial court denied the applications and entered findings of fact and conclusions of law. *See id.* art. 11.072, § 7(a). The trial court found:

> 16. For the first time since July 15, 2012 [at the habeas hearing on April 30, 2014], it was pointed out by [McAdoo] that underneath her signature in various court documents signed on that date, the words "under duress" appear in small barely legible print. The documents consist of Written Plea Admonishments and Conditions of Community Supervision.

> 17. At no time during the plea[s] before [the magistrate] was any claim of duress made by [McAdoo] or [Shaw].

6

18. At no time during processing by Community Supervision officers did [McAdoo] ever claim her pleas were under duress, even as she complained about numerous privacy issues.

19. At no time during the explanation of terms and conditions of supervision before [the trial court] did [McAdoo] ever claim the recently entered plea[s] before [the magistrate were] under duress.

20. It appears the words "under duress" in small print were added under [McAdoo's] signature on some probation documents after they were signed by the judge and delivered to the supervision officer.

21. Neither the Court nor court staff noticed the "under duress" annotations at the time the documents were executed and processed.

22. At no time during the restitution hearing with [Shaw] present on the record before [the trial court] did [McAdoo] ever claim her pleas before [the magistrate] were under duress.

. . . .

24. No allegation of duress was ever brought to the attention of the Court by [McAdoo], [Shaw] or [Lewis], nor by the attorney originally retained to represent [McAdoo] on the original Petition to Revoke Probated Sentence. No such claim was made prior to writ counsel raising the issue in this cause.

25. The Court did not find [McAdoo] to be a credible witness, based upon the numerous, and sometimes outrageous, statements that were not only unsupported by the record, but clearly contradicted by the same, independent of an unimpressive testimonial demeanor.

Based on these fact findings and credibility determinations, the trial court concluded that McAdoo's pleas were voluntary and were not made under duress "as a matter of fact or law." The trial court concluded that the appended notations were added as a strategic ploy: "The 'under duress' annotation

7

discretely placed under certain signatures appears to be nothing more than an attempt to create an escape hatch for use in the event of an unsuccessful term of community supervision."

## II. DISCUSSION

McAdoo appeals the trial court's denial and argues that the trial court erred by concluding that McAdoo's pleas were not entered under duress. *See id.* art. 11.072, § 8. An applicant seeking habeas corpus relief must prove her claim by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing the trial court's ruling on a habeas corpus application, we view the facts in the light most favorable to the trial court's ruling and will uphold the trial court's ruling absent an abuse of discretion. *See id.* In a habeas corpus proceeding under article 11.072, the trial court is the sole finder of fact, and we defer to its fact findings if supported by the record. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). We also defer to the trial court's application of the law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *See Ex parte Navarijo*, 433 S.W.3d 558, 567 (Tex. Crim. App. 2014); *Guerrero*, 400 S.W.3d at 583. We review de novo mixed questions of law and fact that do not depend upon an evaluation of credibility or demeanor. *Ex parte Baldez*, No. 04-13-00494-CR, 2014 WL 1908952, at *2 (Tex. App.—San Antonio May 14, 2014, no pet.).

The facts as found by the trial court support the trial court's conclusion that McAdoo freely and voluntarily entered her guilty pleas. *See* Tex. R. App. P. 31.2. McAdoo, neither before nor after she entered her guilty pleas, alerted the trial court, the magistrate, or the community-supervision officer that her pleas were involuntary. Although McAdoo testified that she told the magistrate and Preston that her pleas were under duress, the trial court did not find McAdoo to be a credible witness, which we may not second-guess, and the record of the plea hearing before the magistrate directly refuted her assertions. *See Ex parte Ali*, 368 S.W.3d 827, 830–31 (Tex. App.—Austin 2012, pet. ref'd) (discussing deference to trial court's findings, particularly where they turn on a witness's credibility and demeanor). McAdoo had multiple opportunities to bring this matter to the trial court's attention and chose to merely note in barely legible writing on a select few signatures that she was signing "under duress."

The trial court found that McAdoo had added the notations after the trial court signed the community-supervision and admonishment papers and after they had been delivered to the community-supervision department—after the magistrate admonished her, after she pleaded guilty, and after she affirmed that her pleas were voluntary and entered because she was guilty and for no other reason. McAdoo argues that the trial court erred by making this finding. Indeed, there is no evidence in the record to support the trial court's finding that McAdoo made the notations after she arrived at the community-supervision department. *Cf. Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) ("When the

9

trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted."). Preston did not testify that McAdoo's notations were not on the documents when she received them; she testified that she did not notice the notations. Indeed, the trial court expressed disappointment that no one noticed the notations. However, the trial court's legal conclusion that her pleas were voluntary and not made under duress was sufficiently supported by multiple other factual findings that were supported by the evidence: (1) McAdoo never alerted the trial court, the magistrate, or the community-supervision department of her notations or that her pleas were involuntary, (2) she affirmatively stated to the magistrate that her pleas were voluntary and that she was pleading guilty for no other reason than that she was guilty of the charged offenses, and (3) she wholly failed to raise the involuntary nature of her guilty pleas at the restitution hearing, which occurred the next day. *See Ex parte Hollowell*, No. 03-11-00240-CR, 2012 WL 1959309, at *7 (Tex. App.—Austin June 1, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding that although some of habeas court's findings not supported by the record, the record as a whole supported denial of application).

McAdoo failed to show that her pleas were involuntary by a preponderance of the evidence; thus, the trial court did not abuse its discretion by denying McAdoo's applications. *See, e.g.*, *Ex parte Arrendondo*, No. 08-11-00327-CR, 2013 WL 6858391, at *2–5 (Tex. App.—El Paso Dec. 27, 2013, pet. ref'd) (mem. op., not designated for publication); *Ex parte Arjona*, No. 09-13-00378-CR, 2013

10

WL 6705989, at *2–3 (Tex. App.—Beaumont Dec. 18, 2013, pet. ref'd) (mem. op., not designated for publication).

## III.  CONCLUSION

We overrule McAdoo's sole issue and affirm the trial court's orders denying her applications for writs of habeas corpus.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 12, 2015