# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00710-CR

**Ex parte Hao Nguyen**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. D-1-DC-09-300304, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Hao Nguyen appeals from the trial court's order denying relief in an article 11.072 post-conviction habeas corpus proceeding. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2005). In a single point of error, Nguyen asserts that he is entitled to habeas relief because ineffective assistance of counsel rendered his guilty plea involuntary. We affirm the trial court's denial of relief.

## BACKGROUND

The record reflects that Nguyen's conviction stemmed from his attack on Pierre Hulan at a karaoke bar.[1] Nguyen and Hulan had been in a previous disagreement and had gone outside with the owner of the bar to talk. At some point during that conversation, the owner told Nguyen to leave. Nguyen left. However, he returned to the bar a few minutes later with a machete. He struck Hulan in the forehead with the machete and then fled the scene. Police found the machete outside the bar.

---

[1] Because Nguyen pled guilty pursuant to a plea agreement, the underlying facts of the offense were not developed at trial. The facts recited herein are taken from the probable cause affidavit contained in the record and the testimony at the writ hearing.

Hulan was transported to the hospital by ambulance where he received two layers of stitches to close the wound on his forehead.

Nguyen was indicted for aggravated assault with a deadly weapon causing bodily injury, a 3g offense.[2]  *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).  Subsequently, Nguyen entered a negotiated plea of guilty to the offense of aggravated assault causing serious bodily injury, a non-3g offense.[3]  *See id.* § 22.02(a)(1).  The trial court accepted Nguyen's plea and sentenced him in accordance with the negotiated plea agreement for "shock" probation—a ten-year sentence, suspended after serving 180 days in the Institutional Division of the Texas Department of Criminal Justice, and placement on community supervision for ten years.  *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 6 (West Supp. 2011).  At the time of the offense and guilty plea Nguyen was a lawful permanent resident alien of the United States.

---

[2]  A "3g offense" refers to a felony enumerated in article 42.12 § 3g(a)(1) of the Texas Code of Criminal Procedure or a felony which involves an affirmative deadly weapon finding under article 42.12 § 3g(a)(2) reflecting that the defendant used or exhibited a deadly weapon during the commission of the offense.  *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 3g(a)(1)-(2) (West Supp. 2011); Tex. Penal Code Ann. § 1.07(17) (West Supp. 2011).  Such a felony carries certain consequences to the accused due to the serious nature of the offense.  First, a person convicted of a 3g felony offense is not eligible for community supervision from the judge.  *See* Tex. Crim. Code Proc. Ann. art. 42.12 § 3g (West Supp. 2011).  Consequently, neither is such an individual eligible for "shock" probation. *State v. Posey*, 330 S.W.3d 311, 315 (Tex. Crim. App. 2011) (trial judge may not grant shock probation unless defendant is eligible for judge-ordered community supervision); *see* Tex. Code Crim. Proc. Ann. art. 42.12 § 6 (West Supp. 2011).  Further, a conviction for a 3g offense affects parole eligibility.  *See* Tex. Gov't Code Ann. § 508.145(d)(1) (West Supp. 2011) (inmate must serve one half of sentence imposed or 30 calendar years actual time before becoming parole eligible).

[3]  The record reflects that the State amended the indictment to allege "serious bodily injury" rather than "bodily injury" and waived the deadly weapon allegation.

Eighteen months later, Nguyen filed a post-conviction application for writ of habeas corpus pursuant to article 11.072. *See* Tex. Code Crim. Proc. Ann. art. 11.072. In a single ground for relief, Nguyen asserted that he suffered ineffective assistance of counsel because of purportedly inadequate advice concerning the immigration consequences of his plea. After conducting a hearing on the application, the trial court denied relief and issued written findings of fact and conclusions of law. *See id.* § 7(a).

## DISCUSSION

In his sole point of error on appeal, Nguyen challenges the habeas court's denial of relief. He maintains that he met his burden of proving that ineffective assistance of counsel rendered his guilty plea involuntary and argues that the habeas court abused its discretion in finding otherwise.

### *Standard of Review*

To prevail in a post-conviction writ of habeas corpus proceeding, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In reviewing a trial court's decision to grant or deny habeas relief, we review the facts in the light most favorable to the court's ruling and, absent an abuse of discretion, uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or unreasonably. *Ex parte Ali*, No. 03-11-00323-CR, 2012 WL 1810194, at *2 (Tex. App.—Austin May 17, 2012, no pet. h.);

*Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

In an article 11.072 post-conviction habeas corpus proceeding, the trial judge is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). Thus, in conducting our review, we afford almost total deference to the trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Ex parte Thompson*, 153 S.W.3d 416, 417-18 (Tex. Crim. App. 2005). In addition, we afford almost total deference to the trial court's application of law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). Finally, when the resolution of the ultimate question turns on the application of legal standards, we conduct a de novo review. *Id.*

### *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, the defendant must show that trial counsel's performance was deficient and that a reasonable probability exists that the result of the proceeding would have been different but for the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Any allegation of ineffectiveness must be firmly founded in the record, and the record must demonstrate affirmatively the alleged ineffectiveness. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). A failure to

make a showing of either deficient performance or prejudice defeats an ineffective-assistance claim. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). When a defendant claims his guilty plea is involuntary due to ineffective assistance of counsel, the defendant must show: (1) counsel's advice with respect to the plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases, and (2) there is a reasonable probability that, but for counsel's deficient performance, the defendant would not have accepted the offer and pled guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

A defendant has the right to effective assistance of counsel in deciding whether to enter a guilty plea. *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011), *cert. denied*, 131 S.Ct. 3073 (2011). A decision to enter a guilty plea based upon erroneous advice from counsel is not voluntary or knowing. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). To provide effective assistance during plea proceedings, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009); *see Harrington*, 310 S.W.3d at 458.

It "is quintessentially the duty of counsel to provide [his] client with available advice about an issue like deportation" and the failure to do so satisfies the first prong of the *Strickland* analysis. *Padilla v. Kentucky*, 130 S.Ct. 1473, 1484 (2010). When federal immigration law clearly specifies that a non-citizen defendant will be deported upon conviction of a particular offense, trial counsel must affirmatively and correctly advise the defendant about the immigration consequences

5

of entering a guilty plea to the offense. *Id.* at 1483. When the consequences are "not succinct and straightforward," counsel's duty is only to advise the defendant of the possibility that the plea may carry a risk of adverse immigration consequences. *Id.* Counsel cannot discharge his duty by remaining silent or refraining from providing "affirmative misadvice." *Id.* at 1484; *see Moussazadeh*, 361 S.W.3d at 691 ("When a serious consequence is truly clear . . . counsel has an equally clear duty to give correct advice. Both failure to provide correct information and providing incorrect information violate that duty.").

The federal immigration law applicable to this case dictates that "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is . . . convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). A "conviction," with respect to an alien, means a formal judgment of guilt where a judge has found the alien guilty or the alien has entered a plea of guilty and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty. 8 U.S.C. § 1101(a)(48)(A). An "aggravated felony" includes a "crime of violence" for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43). A "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The parties do not dispute that Nguyen's conviction for aggravated assault is deemed an aggravated felony for immigration purposes due to the nature of the offense and length of sentence. Nor do they dispute that his conviction for this offense subjected him to deportation.

At the hearing on the application for writ of habeas corpus, Nguyen called three witnesses: Thomas Esparza, an immigration attorney; Andy Duong, his former employer; and Jason

6

McMinn, his initial retained attorney. The State called Thuy-Nhi Morel, the lawyer who served as the interpreter at the guilty plea, and Bruce Fox, Nguyen's trial counsel. At the conclusion of the hearing, the habeas court found that Nguyen had failed to demonstrate ineffective assistance and denied relief. In pronouncing its ruling, the court stated,

> Considering the record as a whole, the Court's file, the record and transcript and the testimony of witnesses, the Court finds that the applicant has not met the first prong of *Strickland*, that trial counsel's performance was not constitutionally defective -- or that it was constitutionally defective. The Court finds it is clear from the record that trial counsel communicated to applicant that his plea of guilty in this case at a minimum carried a risk of deportation; however, moreover, it is clear from the record that counsel communicated and that it was understood by applicant that a plea of guilty would equal deportation in this case.

The habeas court subsequently entered written findings of fact and conclusions of law, and made the following findings concerning the advice trial counsel gave to Nguyen:

t)    Fox conferred with Applicant and informed him of his options. Fox's notes reflect that he discussed both the option of going to trial (and the costs involved) and the option of taking the plea and deportation. Applicant then took some time to think about his choice.

u)    Fox clarified that he was aware of immigration consequences on an aggravated felony and so informed Applicant that he was facing deportation. He explained to Applicant that because of this conviction, if ICE placed a hold on him, he would be deported.

v)    Fox even recalled a conversation with Applicant regarding his plans upon returning to Vietnam and also his desire to try to remain in the U.S. long enough to witness the birth of his child.

. . .

7

y) Based on this record as a whole, including Mr. Fox's credible testimony, this Court finds that Applicant was able to sufficiently communicate with counsel.

z) This Court further finds that Applicant was informed by counsel that he faced deportation as a result of this conviction.

The habeas court concluded that Nguyen failed to meet either prong of the *Strickland* standard concerning Fox's advice:

kk) Unlike Padilla, Applicant in this case received accurate advice from his attorney. Mr. Fox informed him that because of this conviction, he faced deportation. As such, Applicant cannot show that counsel's advice was deficient and thus cannot meet the first prong of *Strickland*.

ll) Further, Applicant cannot meet the second prong of *Strickland* either because he has not convinced this Court that a decision to reject the plea offer would have been rational.

On appeal, Nguyen contests these findings and conclusions.

In an affidavit accompanying his application for writ of habeas corpus, Nguyen asserted that his trial counsel, Bruce Fox, never advised him a conviction would result in deportation. He swore that Fox never told him that he could or would be deported if he were found guilty of aggravated assault or that he would be deported if he accepted the deal for probation. Nguyen expressed in his affidavit that he did not feel that he was meaningfully informed about the immigration consequences of his plea. However, the testimony and evidence at the writ hearing demonstrated otherwise.

Andy Duong, Nguyen's employer at the time of the offense who initiated Fox's consultation with Nguyen, was present for the initial preliminary meetings between Nguyen and Fox.

He testified that the subject of deportation was "broached" at those meetings as generally being a consequence for such a serious offense. Although Duong could not remember the specific details discussed, he indicated that the implication was apparent to him that if Nguyen was to be convicted of this crime there was the strong likelihood of deportation. When defense counsel asked,"He didn't say if you are convicted, you are definitely going to be deported?," Duong responded, "Not in those exact words, no." Duong later confirmed that, even at these initial consultation meetings which he characterized as more of an opportunity to get acquainted as opposed to addressing any consequences, "[t]he implication of deportation was there."

Bruce Fox, Nguyen's trial counsel, testified at the writ hearing that even at the initial consultation meeting he expressed to Nguyen that if Nguyen did not win this case at trial "I believed without doubt that he was going to be deported." His testimony reflected that he understood that the plea bargain he negotiated with the State on Nguyen's behalf would have Nguyen pleading to an aggravated felony under the deportation rules. Fox testified that he talked with Nguyen about who he had back in Vietnam and his plans after being deported. They discussed the possibility of delaying his departure until after the birth of his child. Fox indicated that he believed immigration authorities would put a hold on Nguyen when he went to serve his 180 days for shock probation. He testified that he routinely put stars on the plea paperwork next to certain admonishments to indicate a heightened focus or discussion of the subject matter. In this case, he put stars next to the admonishment about citizenship and deportation reflecting his discussions with Nguyen about deportation.

9

Further, Fox testified that the notes in his case file documented the advice he gave to Nguyen and the conversations he had with him where "I was telling him he would be deported." Specifically, Fox's notes document a conversation with Nguyen and an interpreter where they reviewed the possibilities of "TRIAL + $" or "P/B + DEPORTN." Fox testified that these handwritten notes represented his discussion with Nguyen about the options of going to trial or taking the plea bargain offer: "TRIAL + $" meaning trial and its associated costs; "P/B + DPORTN" meaning plea bargain and deportation.[4] The whole of Fox's testimony indicated that he told his client that he would be deported. From Fox's perspective, the only way to avoid deportation would be to avoid conviction and he did not believe that was possible. His testimony reflects that he communicated this to Nguyen. Fox testified that he felt that the only option for Nguyen aside from the plea bargain he negotiated with the State would be to go to trial, be convicted of a 3g offense, and possibly go to the penitentiary for five to ten years before being deported.

Nguyen maintains that the habeas court's findings and conclusions concerning the advice Fox gave to him about deportation do not comport with the evidence of all the advice trial counsel gave to him. First, Nguyen suggests that Fox's advice was conditional because, he alleges, Fox told him that he believed he would be deported if he did not try to win the case at trial. However, Fox's testimony at the writ hearing was that he made it clear to Nguyen, even at their initial meetings, that "if he didn't try and win this case that [Fox] believed without doubt that he was

_____

[4] Defense counsel asked Fox, "You did not document in any way, shape, or form the advice you claim you gave that he definitely would be deported upon his conviction for aggravated assault?" Fox responded, "That's not true." He explained, "[I]t says right there 'Possibilities,' and the second possibility was 'plea bargain and deportation.' It doesn't say, 'plea bargain and possibly deportation'; it says, 'plea bargain and deportation.'"

10

going to be deported." Fox's advice was not to "try to win" the case at trial to avoid deportation, but to "try *and* win" the case at trial. Contrary to Nguyen's assertions, Fox's advice was not that deportation could be avoided through a trial, but only through *winning* at trial because that would avoid a conviction. However, from Fox's testimony at the hearing, it is clear that Fox did not believe Nguyen could win at trial. Fox explicitly testified that Nguyen had no viable defense, no justification for the use of deadly force. He stated, "I thought he'd get convicted of this offense. I didn't see any way out of that, quite frankly." Fox's testimony reflects that throughout the course of his representation he communicated to Nguyen that he did not believe Nguyen could avoid a conviction, not even through trial.

In addition, Nguyen suggests that Fox gave conflicting advice because he "discussed a possible asylum strategy" with him. However, Fox's testimony reflects that during his conversation with Nguyen about how he came to this country and who he had back in Vietnam, Fox simply mentioned the option of looking at the possibility of asylum. The record does not reflect a "discussion of a possible asylum strategy," but rather that Fox, aware that Nguyen was facing deportation if convicted and believing Nguyen could not avoid conviction, "was looking at one point of an angle of would he have a possibility of asylum here." Merely mentioning the option of possible asylum was not advice contrary to the advice that Nguyen would be deported if convicted. Rather, from the context of Fox's testimony, it appears it was an option mentioned as a result of counsel's knowledge that if convicted, Nguyen would be deported—an option to explore *because* Nguyen was facing deportation upon conviction.

11

Nguyen further suggests that he received conflicting advice because Fox advised him that he would be deported if immigration authorities placed a hold on him. He maintains that this constituted advice that there was a possibility that immigration authorities would not follow through with deportation proceedings. However, while Fox testified that he advised Nguyen that if immigration authorities placed a hold on him, he would be deported, Fox further testified that he communicated to Nguyen that he fully expected immigration authorities to place a hold on him. In fact, Fox's testimony reflected that attempts were made to schedule sentencing after the birth of Nguyen's child because Fox anticipated immigration authorities would put a hold on Nguyen when he went to serve his 180 days and Nguyen would not return at all once incarcerated. We do not construe Fox's statement that if immigration authorities placed a hold on Nguyen, he would be deported, as advising Nguyen that there was a possibility that he would not be deported. Rather, Fox was informing his client that deportation would ensue upon the action of immigration authorities placing an immigration hold on Nguyen, whenever that may be.[5]

Nguyen also complains that Fox failed to review the relevant immigration statutes concerning deportation and failed to write Nguyen a letter indicating deportation would be a certainty upon conviction. However, Fox's testimony at the writ hearing was that he did not look up the immigration statutes in reference to this specific case because he knew the law. His testimony demonstrated his knowledge of and familiarity with the relevant immigration statutes. As for the letter, nothing requires counsel to advise his client of the immigration consequences in writing. The

---

[5] The record reflects that immigration authorities did not place a hold on Nguyen during the six months he was incarcerated, as trial counsel anticipated, but only eight months after he was released on community supervision—14 months after his conviction.

record contains evidence showing that Fox knew the relevant immigration statutes, understood the immigration consequences of his client's plea, and communicated those consequences to Nguyen.

Nguyen's challenge to the habeas court's findings and conclusions is premised upon his contention that the court ignored the totality of the information Fox conveyed to him. He argues that some advice was erroneous which rendered "any correct advice meaningless." However, as discussed above, trial counsel did not give incorrect or conflicting advice. Moreover, in an article 11.072 post-conviction habeas corpus proceeding, the trial judge is the sole finder of fact. *Garcia*, 353 S.W.3d at 788. It was within the habeas court's province to judge of the credibility of the witnesses and resolve conflicting facts. *See Amezquita*, 223 S.W.3d at 367. The court explicitly found trial counsel's testimony to be credible.

The Supreme Court's opinion in *Padilla* commands that "when the deportation consequence is truly clear," counsel's "duty to give correct advice is equally clear." *See Padilla*, 130 S.Ct. at 1484. Viewed in the light most favorable to the habeas court's ruling, the evidence supports a finding that trial counsel performed his duty. The evidence and testimony at the writ hearing demonstrated that Fox appropriately and correctly advised Nguyen about the immigration consequences of his plea—that he faced deportation upon conviction for this offense. Thus, the record supports the habeas court's determination that Nguyen failed to show that trial counsel's performance was deficient and, consequently, the court's conclusion that he failed to meet his burden of proving ineffective assistance of counsel. Based on the record before it, the habeas court did not abuse its discretion in denying Nguyen's application for writ of habeas corpus. We overrule his sole point of error.

13

**CONCLUSION**

Because Nguyen failed to show deficient performance on the part of his trial counsel,

he failed to establish his ineffective assistance of counsel claim.  Accordingly, the habeas court did

not abuse its discretion in denying his habeas corpus application.[6]  We affirm the trial court's order

denying relief.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:  July 18, 2012

Do Not Publish

---

[6] Because we find that the record supports the habeas court's determination that Nguyen failed to prove the deficient performance prong of *Strickland*, we do not address the habeas court's findings or conclusions concerning the prejudice prong or Nguyen's challenge to them.  *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (failure to make showing under either prong of *Strickland* defeats an ineffective-assistance claim); *see also* Tex. R. App. P. 47.1.