**Alan R. VAN NATTER, Appellant,**

v.

**Barbara C. VAN NATTER, Respondent.**

**No. WD 55851.**

Missouri Court of Appeals,
Western District.

March 9, 1999.

Anita I. Rodarte, Kansas City, for appellant.

Patrick B. Starke, Blue Springs, for respondent.

Before BRECKENRIDGE, P.J., C.J., ULRICH, J. and HOWARD, J.

ULRICH, Judge.

Alan Van Natter (Husband) appeals the judgment of the trial court dissolving his marriage to Barbara Van Natter (Wife). He claims that the trial court erred in (1) awarding Wife maintenance of $450 per month, and (2) dividing the marital property. The judgment of the trial court is affirmed in part and remanded in part.

Husband and Wife were married on May 19, 1971, in Joplin, Missouri. Soon thereafter, Husband began working at Wal–Mart as a stocker. Over the years, Husband received several promotions at Wal–Mart and was transferred to several stores in different towns and cities in the midwest. Finally, in September 1989, Husband was made manager of the Blue Springs Wal–Mart and remained there until he quit in May 1996 to return to college. In the last four years of his employment as manager of the Blue Springs store, Husband earned $125,000 in 1993, $131,000 in 1994, $136,000 in 1995, and $126,000 in 1996.

During the marriage, the couple's roles were fairly traditional. Husband was the breadwinner, and Wife managed the domestic duties. Oftentimes, after Husband was transferred to a different store in a new town, Wife would stay behind to close the old house and prepare for the move. Wife also held a few part-time jobs during the marriage. Her work experience, however, was limited to clerical, minimum wage-type jobs. At the time of trial, Wife was working part-time for a grocery store earning $9.50 an hour.

In early 1996, Husband became enamoured with another women, Pam Flood, one of his assistant managers at Wal–Mart. After Wife discovered a note from Ms. Flood to Husband, Husband confessed to her that he and Ms. Flood professed strong feelings for one another. He told Wife, however, that he wanted to end his relationship with Ms. Flood and attempt to save his marriage. Husband told Wife that he decided to leave his employment at Wal–Mart and return to college. Wife supported Husband's decision because she believed separation of her Husband and Ms. Flood was important to save the marriage. A few weeks later, Husband

began seeing Ms. Flood again. On May 31, 1996, Husband resigned his position with Wal–Mart. He began taking classes at a community college and working part-time as a checker at Wal–Mart in the fall.

During the summer and fall of 1996, Wife believed the both parties were endeavoring to save their marriage. She, however, was apprehensive that Husband had resumed his relationship with Ms. Flood, and although he had, he continually denied it. In October 1996, Wife confronted Husband about his relationship with Ms. Flood, and he admitted that he was seeing her. Wife asked Husband to leave and suggested he come back in a day or two to retrieve his personal property. Husband stated that he would take everything he wanted then and left. Since his departure, he has never spoken to Wife.

Husband filed a petition for dissolution of marriage on October 22, 1996, requesting the court to dissolve his marriage to Wife and to divide the marital property and debts. Wife filed an amended answer and cross-petition in November 1997 asking the court to dissolve her marriage to Husband, divide the marital property, and award her maintenance and attorney's fees. Following trial, the family court commissioner entered findings and recommendations for dissolution dissolving the couple's marriage. The commissioner divided the parties' assets which consisted of a home, automobiles, household goods, investments, and retirement accounts; awarded Wife $450 per month in maintenance; and ordered Husband to pay $1500 of Wife's attorney's fees. The trial court, thereafter, entered a judgment adopting the commissioner's findings and recommendations. This appeal by Husband followed.

■■■■ On appeal, Husband claims that the trial court erred in awarding Wife $450 per month in maintenance and in dividing the martial property. The judgment of a trial court dissolving a marriage will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Crews v. Crews*, 949 S.W.2d 659, 663 (Mo.App. W.D.1997). The trial court has wide discretion in determining if a

maintenance award is appropriate. *Ellis v. Ellis*, 970 S.W.2d 416, 417 (Mo.App. W.D. 1998). In reviewing a trial court's determination regarding maintenance, an appellate court must view the evidence in a light favorable to the decree disregarding contrary evidence. *Id.* at 418. An appellate court must also defer to the trial court's findings even if the evidence could support a different conclusion because it is in a better position to judge witness credibility, sincerity, and character and other intangibles not revealed in a transcript. *Id.* The trial court's decision regarding maintenance will not be reversed absent an abuse of discretion. *Id.* at 417. Likewise, the trial court's division of property will be disturbed on appeal only if it is so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Crews*, 949 S.W.2d at 663.

█ Husband first claims that the trial court erred in awarding Wife maintenance of $450 per month. He argues that Wife was capable of providing for her reasonable needs through employment and the income-producing property awarded to her. A trial court may grant maintenance if the spouse seeking it lacks sufficient property, including marital property apportioned to her, to meet her reasonable needs, and if she is unable to support herself through appropriate employment. § 452.335.1, RSMo 1994.

Wife's statement of income and expenses reported that her average monthly expenses totaled $2574. At trial, she testified that she was currently employed part-time as a grocery store cashier earning $9.50 an hour. Her monthly gross income from such employment was $1164. Wife further testified that she would begin full-time employment within the next month earning approximately $1700 to $1800 in gross income per month. Obviously, her net income would be less. Considering Wife's education and limited work experience and employment history, such earnings were at or near her maximum earning capacity. Thus, the trial court correctly found that she was unable to support

herself and meet her expenses through employment.

Husband contends, however, that what income Wife lacks to meet her reasonable needs through employment, she makes up through the income-producing property awarded to her. In the dissolution, Wife was awarded marital property consisting of the marital residence subject to a mortgage, an automobile, household goods, various bank accounts (some of which had been depleted during the separation) and investments, and retirement accounts. The investments mainly consisted of Wal–Mart stock with a value of $116,991. The retirement accounts awarded to Wife included 53% of Husband's Wal–Mart profit sharing plan with a value of $578,230, a $41,000 IRA, and Wife's retirement account through her employer valued at $4300.

█ A spouse is not required to deplete or consume his or her portion of marital assets before being entitled to maintenance. *Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App. W.D.1996). Interest income from the investment of marital property, however, must be considered in determining the necessity for, and amount of, maintenance. *In re Marriage of Clarke*, 950 S.W.2d 11, 13 (Mo. App. E.D.1997). Retirement accounts that are not readily available to a party without penalty and taxes should not be considered income-producing for purposes of determining whether a spouse is entitled to maintenance. *Witt*, 930 S.W.2d at 503. While all the assets awarded to Wife totaled approximately $865,000, the bulk of the assets was in the marital residence and retirement plans [1] and, therefore, was not income-producing property. The only income-producing property awarded to Wife, therefore, was the Wal–Mart stock valued at the time of trial at $116,991. No evidence was offered, however, regarding the income potential of the investment. Husband speculates in his brief that Wife could invest $116,991 and earn a return of 7%.[2] He contends that applying a 7%

---

1. Wife testified that Husband's Wal–Mart profit sharing plan was not readily available without penalties and taxes.

2. In *Drikow v. Drikow*, 803 S.W.2d 122, 128 (Mo.App. E.D.1990), the court applied a 7% interest rate to a money judgment in determining whether a spouse was entitled to maintenance.

interest rate to the value of the Wal–Mart stock would yield a monthly income of approximately $700. A spouse, however, need not risk assets to generate a higher return, and a court is not required to impute a higher amount of income based on more aggressive investments. *In re Marriage of Clarke*, 950 S.W.2d at 13. Furthermore, even if Wife could earn an extra $700 per month in investment income, she would still be unable to meet her reasonable needs with all of her income sources. The trial court, therefore, properly awarded her maintenance.

■ Next, Husband contends that the court placed an inordinate emphasis on Husband's infidelity in awarding maintenance. The relevant factors that a court must consider in determining the amount and duration of maintenance are listed in section 452.335.2, RSMo 1994:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factor.

§ 452.335.2, RSMo 1994. In its judgment, the trial court found:

Petitioner [Husband] has committed marital misconduct by entering into a relationship with Pamela Flood. While Petitioner denies that there was a sexual relationship with Ms. Flood until after the parties separated, the relationship itself and Petitioner's concealment of it was clearly the cause of the breakdown of the marriage. The Court takes Petitioner's conduct into account in making the division of the property, as well as in making any award of maintenance.

The court's mention of Husband's misconduct in its judgment did not indicate that the court gave it any more weight than any other relevant factor in awarding maintenance to Wife. *Hernandez v. Hernandez*, 872 S.W.2d 161, 165 (Mo.App. W.D.1994). The trial court enumerated several other factors in awarding maintenance including the duration of the marriage, the age of the parties, the standard of living enjoyed by the parties during the marriage, the disparate earning capacity of the parties, and the conduct of Wife throughout the marriage. The court, therefore, did not place undue emphasis on Husband's infidelity in awarding maintenance. Point one is denied.

In his second point on appeal, Husband claims that the court erred in awarding him household goods in his possession valued at $3670. At trial, Husband submitted a proposed division of household goods to the trial court. The proposal allocated $3670 in household goods to Husband. The court then awarded Husband $3670 in household goods "in his possession." Husband contends, however, that all of the marital household goods were in Wife's possession and requests this Court to amend the judgment and award to him the goods he requested.

■ The record reveals that all of the household goods remained in Wife's possession at the marital residence. Husband testified that when he left the marital residence in October 1996, he only took clothing and a few books and that he has not returned to the residence or collected any other personal property. This evidence was undisputed.

Although Husband was awarded $3679 in household goods, he has not received the items. Wife stated that Husband could obtain the items Husband desired and which do not exceed the amount awarded to Husband by the court. The items Husband desires from Wife does not appear from the record to be a controversy. The controversy seems to be Husband's failure to acquire the items from Wife. The cause is remanded to the trial court for such orders as are necessary, if any, to facilitate Husband's acquisition of items from Wife totaling the sum the court directed.

The judgment of the trial court is affirmed in part and remanded in part.

All concur.